UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLEVELAND NEAL,

             Plaintiff,                    CIVIL ACTION NO. 07-10671

         v.                         DISTRICT JUDGE JOHN CORBETT O'MEARA

JOYCE ANSPAUGH-KISNER,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
CELESTE FRASER, SAVITHRI
KAKANI, JANE DOE[1], RYAN
BEEKMAN, MICHIGAN DEPARTMENT
OF CORRECTIONS, CORRECTIONAL
MEDICAL SERVICES, INC., CRAIG
HUTCHINSON,

             Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

      This matter comes before the Court on (1) defendants Correctional Medical Services, Inc.

("CMS"), Craig Hutchinson and Savithri Kakani's Motion to Dismiss or for Summary Judgment

(D/E # 22)[2] and (2) defendant Ryan Beekman's Motion for Summary Judgment (D/E # 35).[3]  For

_____

     [1]On December 12, 2007, Plaintiff identified the Jane Doe defendant as Maureen Nelson,
D.O. (D/E # 45).

     [2]Defendant Celeste Fraser joined in that motion originally, but she has since been
dismissed from this action by stipulation of the parties (D/E # 46).

     [3]Defendant Joyce Anspaugh-Kisner also filed a motion for summary judgment (D/E #
23), but that motion is now moot because she has been dismissed from this action by stipulation

the reasons discussed below, the court recommends that defendants' motions be **GRANTED**,[4]

the claims against CMS, Hutchinson and Kakani be dismissed, and Dr. Beekman be granted

summary judgment. Moreover, while nothing is before the court with regard to the remaining

two defendants, the Michigan Department of Corrections ("MDOC") and Maureen Nelson, the

court recommends that the claims against MDOC and Nelson be dismissed sua sponte for the

reasons discussed below, and the case be dismissed in its entirety.

## II.  Background

Plaintiff is an inmate in the custody of the Michigan Department of Corrections

(MDOC). In this action, plaintiff filed suit pursuant to 42 U.S.C. § 1983, alleging deliberate

indifference to plaintiff's serious medical needs by defendants.

### A.  Second Amended Complaint

According to plaintiff's second amended complaint (D/E # 12), he injured himself on

January 19, 2004 after falling out of his bunk at the Gus Harrison Correctional Facility. After

the fall, plaintiff was suffering severe pain in his right hand, right wrist and right shoulder, but a

nurse merely gave him a wrist brace and ordered an X-ray without examining plaintiff's shoulder

(Second Amended Complaint, ¶ 16A). Two days later, an X-ray was taken of plaintiff's right

hand (Second Amended Complaint, ¶ 17A).

---

of the parties (D/E # 47).

[4]It should be noted that defendants' claim that the action is barred by the statute of limitations is without merit and dismissal is not recommended on that ground. (See discussion, pp 10-11)

On February 25, 2004, Celeste Fraser, a physician's assistant at the Gus Harrison Correctional Facility, treated plaintiff. After consulting with a Doctor Stankel, Fraser told plaintiff that plaintiff would immediately be transported to the Bixby Medical Center (Second Amended Complaint, ¶ 19A). At the Bixby Medical Center, an unknown doctor, later identified as Maureen Nelson, informed plaintiff that plaintiff's right hand had been broken for some time. Nelson also prescribed plaintiff some Motrin and told plaintiff to avoid re-injuring his finger (Second Amended Complaint, ¶¶ 20A-21A). Additionally, plaintiff received a wrist brace (Second Amended Complaint, ¶ 22A).

On March 4, 2004, Fraser concealed critical facts from plaintiff's medical records (Second Amended Complaint, ¶ 23A) and plaintiff received no medical treatment for over a year (Second Amended Complaint, ¶ 24A).

On March 10, 2005, after Dr. Craig Hutchinson, the senior Regional Medical Director for CMS, approved an examination, plaintiff was examined by Dr. K.N. Mishra. Dr. Mishra determined that plaintiff's right finger and midcarpal joint were dislocated. Dr. Mishra also found that plaintiff was having persistent pain in his right hand (Second Amended Complaint, ¶ 25A). On June 9, 2005, after receiving the results of plaintiff's C.T. scan, Dr. Mishra decided to seek a second opinion from Dr. Ryan Beekman regarding the gross deformity of plaintiff's meta-carpal (Second Amended Complaint, ¶ 26A).

Despite Dr. Mishra's request, plaintiff was not sent to see Dr. Beekman until October 25, 2005 (Second Amended Complaint, ¶ 29A). After assessing plaintiff's pain, Dr. Beekman

recommended that plaintiff get an EMG and that he be given a splint to wear at night (Second Amended Complaint, ¶ 29A).

On December 12, 2005, plaintiff had an EMG performed on his right hand. The EMG revealed some structural problems at the wrist which were causing motor nerve problems (Second Amended Complaint, ¶ 32A).

On January 17, 2006, Dr. Beekman sent a Specialty Consult Report stating that plaintiff needs surgery on his right hand (Second Amended Complaint, ¶ 34A). Savithri Kakani, a physician's assistant at the Gus Harrison Correctional Facility, was suppose to make the appointment for plaintiff's surgery, but she knowingly failed to do so and instead transferred plaintiff's case to Dr. Anil Prasad, who did not see plaintiff until April 2006 (Second Amended Complaint, ¶ 35A).

On April 11, 2006, Dr. Prasad told plaintiff that plaintiff was suppose to have had surgery on his right hand. Dr. Prasad also issued a Consultation Request requesting that plaintiff have surgery within four weeks (Second Amended Complaint, ¶ 36A).

On April 19, 2006, a Dr. Ikrami told plaintiff that Dr. Beekman would perform the surgery (Second Amended Complaint, ¶ 37A). However, Dr. Prasad later told plaintiff that Dr. Beekman refused to perform the surgery and that Dr. Beekman did not want to see plaintiff again (Second Amended Complaint, ¶ 38A). Plaintiff was eventually referred to another surgeon (Second Amended Complaint, ¶ 40A).

**B. Motions Before the Court**

**1. CMS, Hutchinson, and Kakani's Motion**

On August 20, 2007, CMS, Hutchinson and Kakani filed their motion to dismiss or for summary judgment (D/E # 22). In that motion, defendants argued that plaintiff failed to properly exhaust his administrative remedies and that plaintiff's claims were outside the applicable statute of limitations. Defendants also argued that plaintiff failed to state a claim of deliberate indifference because plaintiff received treatment in a timely manner. Defendants further argued that plaintiff failed to state a claim against CMS because plaintiff failed to allege a specific policy or custom of CMS' that violated plaintiff's rights.

Plaintiff did not file a response to CMS, Hutchinson and Kankani's motion to dismiss or for summary judgment.

## 2. Dr. Beekman's Motion

On October 5, 2007, Dr. Beekman filed a motion for summary judgment (D/E # 35). In that motion, Dr. Beekman argued that he did not act under the color of state law while treating plaintiff because he is a private physician who treated plaintiff at a private hospital. Dr. Beekman also argued that plaintiff failed to allege any facts constituting deliberate indifference on the part of Dr. Beekman.

On November 20, 2007, plaintiff filed a response to Dr. Beekman's motion for summary judgment (D/E # 39). In that response, plaintiff argued that Dr. Beekman provided services to CMS pursuant to a contract or subcontract, as exhibited by Dr. Beekman's presence on a list of specialists available to Jackson-area inmates. Plaintiff also argued that Dr. Beekman acted in deliberate indifference by failing to address pain management during the October 25, 2005

consultation, failing to promptly discuss surgical intervention with Dr. Mishra, and by declining to perform surgery on plaintiff.

On December 3, 2007, Dr. Beekman filed a reply to plaintiff's response (D/E # 42). In that reply, Dr. Beekman again argued that he did not act under the color of state law while treating plaintiff. Dr. Beekman noted that neither Dr. Beekman nor the practice for which he worked were identified by the state of Michigan as specialists under contract with CMS. Dr. Beekman also asserted that none of the facts cited to by plaintiff suggested that Dr. Beekman deliberately ignored plaintiff's medical needs.

### III.  Standard of Review

Defendants first seek dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests whether a cognizable claim has been pleaded in the complaint." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff. Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006). A district court need not, however, accept as true legal conclusions or unwarranted factual inferences. Kottmyer, 436 F.3d at 688.

In the traditional view, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Kottmyer, 436 F.3d at 688, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Recently, however, the Supreme Court revised

the "no set of facts" portion of the Rule 12(b)(6) standard in <u>Bell Atlantic Corp. v. Twombly</u>, __

U.S. __, __, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  <u>Twombly</u> held that the "famous"

no-set-of-facts formulation "has earned its retirement," and instead dismissed the plaintiff's

antitrust-conspiracy complaint because it did not contain facts sufficient to "state a claim to relief

that is plausible on its face."  127 S. Ct. at 1974.  This standard of review does require more than

the bare assertion of legal conclusions.  <u>Lillard v. Shelby County Bd. of Educ.</u>, 76 F.3d 716, 726

(6th Cir.1996).  As described in <u>Twombly</u>:

> [A] plaintiff's obligation to provide the 'grounds' of his
> 'entitle[ment] to relief' requires more than labels and conclusions,
> and a formulaic recitation of a cause of action's elements will not
> do.  Factual allegations must be enough to raise a right to relief
> above the speculative level on the assumption that all the
> complaint's allegations are true.  [<u>Twombly</u>, 127 S.Ct. at 1964-65
> (citing Fed.R.Civ.P. 8(a)).]

Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is

and the grounds upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d

80 (1957) (abrogated on different grounds by <u>Twombly</u>, 127 S.Ct. 1955).  In application, a

"complaint must contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under some viable legal theory."  <u>Lillard</u>, 76 F.3d at 726 (citation

omitted).  A court cannot grant a motion to dismiss under Rule 12(b) (6) based upon its disbelief

of a complaint's factual allegations.  <u>Wright v. MetroHealth Med. Ctr.</u>, 58 F.3d 1130, 1138 (6th

Cir. 1995).

Defendants also move for summary judgment pursuant to Federal Rule of Civil

Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim

is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV.  Discussion**

**A.  CMS, Hutchinson, and Kakani's Motion**

### 1. **Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e et seq., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  Woodford, 126 S.Ct. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002)) (emphasis in original).

Within the evidence provided by defendants, there are two grievances filed by plaintiff regarding his wrist pain (attached as part of Exhibit B to CMS, Hutchinson and Kakani's Motion to Dismiss or for Summary Judgment).  Grievance ARF 2004 02 0371 12E4, however, was not appealed all the way through the grievance process.  Grievance ARF 051201 706 1203 was

appealed through Step III of the grievance process, but it was not decided on the merits. Instead, the grievance was denied as duplicative and unclear. Plaintiff was also encouraged at Step III to the review the filing requirements for grievances.

As discussed above, proper exhaustion means using all the steps an agency holds out so that the agency can address issues on the merits. Woodford, 126 S. Ct. at 2385. Applying that standard to plaintiff's grievances reveals that neither grievance was properly exhausted and that plaintiff's claims against CMS, Hutchinson, and Kakani should be dismissed for a failure to exhaust administrative remedies.

### 2. Statute of Limitations

In Wilson v. Garcia, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here), the Supreme Court held that, because 42 U.S.C. § 1983 contains no statute of limitations, a federal court considering an action brought under that statute must borrow the state statute of limitations that is "most analogous" to apply to the § 1983 claim. Wilson, 471 U.S. at 275. The Court then concluded that the most analogous cause of action under state law to § 1983 is a tort action for personal injuries. Wilson, 471 U.S. at 279. Thus, federal courts must apply the state statute of limitations for personal injury claims in all § 1983 cases. In Michigan, the general statute of limitations for personal injury actions is three years. See Mich. Comp. Laws Ann. § 600.5851.

Although statutes of limitations and tolling principles are governed by state law, the question of when civil rights claims accrue remains one of federal law. LRL Properties v.

Portage Metro Hous. Auth., 55 F.3d 1097, 1107 (6th Cir. 1995); Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984). Generally, a civil rights cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that is the basis of his action. Friedman v. Estate of Presser, 929 F.2d 1151, 1159 (6th Cir. 1991); Sevier, 742 F.2d at 273. "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Sevier, 742 F.2d at 273.

Michigan law did at one time did toll the limitations period during a person's incarceration, but in 1994 the Michigan legislature amended the tolling statute to remove imprisonment as a disability tolling the statute of limitations. See 1993 Mich. Pub. Acts 78 (effective Apr. 1, 1994); see also, Wallace v. Engler, No. 95-40273, 1997 WL 111777, *6 (E.D. Mich. January 28, 1997). However, the statute of limitations would have been tolled while plaintiff was exhausting his administrative remedies. Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000), citing Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam).

In this case, plaintiff's complaint was filed on February 15, 2007 (D/E # 1) and, consequently, any claims would have had to have accrued after February 15, 2004, to be within the statute of limitations, absent any tolling. Defendants argue that plaintiff's claims accrued on January 19, 2004, the day plaintiff fell out of his bunk, and are therefore barred. However, while plaintiff injured himself on January 19, 2004, his deliberate indifference claim did not accrue until plaintiff was allegedly denied medical care months later. Thus, even without considering the tolling of the statute of limitations during the exhaustion of plaintiff's administrative remedies, plaintiff's claims are clearly within the statute of limitations.

### 3. Deliberate Indifference Claims

In any § 1983 action, the initial inquiry must focus on whether two essential elements are present: whether the conduct complained of was committed by a person acting under color of state law; and whether this conduct deprived the person of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981); Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980); Jones v. Duncan, 840 F.2d 359, 361-62 (6th Cir. 1988). Absent either element, a § 1983 claim will not lie. Christy v. Bandlett, 932 F.2d 502, 504 (6th Cir. 1991).

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 103-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prisoners retain Eighth Amendment rights to be free from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Farmer, 511 U.S. at 838-42; Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo

County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).  To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

### a. Claim against Hutchinson

While never stated in much detail, plaintiff's claims against Hutchinson are found in a number of paragraphs of the second amended complaint. For example, plaintiff alleges that Hutchinson is responsible for overseeing the system of medical care for MDOC prisoners pursuant to CMS and MDOC's contract and policies, and that those policies led to the ongoing violation of plaintiff's clearly established rights (Second Amended Complaint, ¶ 42A). Plaintiff also alleged that the system, policy or custom established by Hutchinson and CMS denied plaintiff an opportunity for prompt medical or surgical intervention (Second Amended Complaint, ¶ 42A). Plaintiff further alleged that each defendants' delay in treating plaintiff and refusal to provide medical care was pursuant to policies and customs of Hutchinson, CMS and MDOC (Second Amended Complaint, ¶ 52A). Similarly, plaintiff alleged that his injury and pain were incurred because of Hutchinson, CMS and MDOC's execution of an unconstitutional municipal policy and custom (Second Amended Complaint, ¶ 53A) and that they maintain a policy or custom that sanctions the maintenance of MDOC prison conditions that infringe upon rights (Second Amended Complaint, ¶ 54A).

Despite the numerous references to Hutchinson in the second amended complaint, plaintiff never alleges facts supportive of the requisite personal involvement against him. Instead, plaintiff makes vague allusions to unidentified policies and customs that plaintiff believes were promulgated by Hutchinson and which led to the violation of plaintiff's rights. Given plaintiff's failure to identify a particular policy of Hutchinson that he claims led to the constitutional violation, plaintiff has failed to allege a claim plausible on its face and his claims

against Hutchinson should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6). Plaintiff has also not introduced sufficient evidence, or any evidence for that matter, demonstrating a genuine issue of material fact as to whether his injury was the result of an actual policy or custom of Hutchinson and, therefore, Hutchinson would be entitled to summary judgment.

### b. Claim against CMS

A government contractor, like CMS, cannot be held liable on a respondeat superior theory. Johnson v. Karnes, 398 F.3d 868, 877 (6th Cir. 2005); Street v. Corr. Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996). A private contractor is, however, liable for constitutional violations caused by a policy or custom of that private contractor. Johnson, 398 F.3d at 877; Street, 102 F.3d at 817; Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993). In this case, similar to the discussion above regarding the claim against Hutchinson, plaintiff fails to identify any specific policy or custom of CMS and, instead, merely makes vague allusions to CMS' policies and customs. Thus, plaintiff has failed to state a claim upon which relief can be granted and his claims against CMS should be dismissed. Plaintiff has also not introduced sufficient evidence, or any evidence for that matter, demonstrating a genuine issue of material fact as to whether his injury was the result of an actual policy or custom of CMS and, therefore, CMS is entitled to summary judgment.

### c. Claim against Kakani

Plaintiff's sole claim against Kakani is found in paragraph 35A of his second amended complaint. According to plaintiff, Kakani was suppose to make the appointment for plaintiff's surgery in January 2006, but Kakani knowingly failed to do so and instead transferred plaintiff's

case to Dr. Prasad, who did not see plaintiff until April 2006. That delay is alleged to have caused plaintiff severe pain as well as lessening the odds that any subsequent surgery would alleviate plaintiff's pain.

Kakani's motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) should be denied. Plaintiff has stated a claim upon which relief can be granted. Plaintiff alleged both the subjective and objective elements of a deliberate indifference. The objective element was alleged through plaintiff's claim that he was in severe pain and through plaintiff's allegation that the delay in medical treatment had a detrimental effect. The subjective element was alleged through plaintiff's allegations that Kakani wilfully and knowingly delayed treatment despite having knowledge of plaintiff's pain and need for prompt treatment. Whether or not plaintiff would ultimately prevail on his claim, he has stated a claim that is plausible on its face.

With respect to Kakani's motion for summary judgment, Kakani has failed to meet the initial burden of demonstrating the absence of a genuine issue of material fact. Nowhere in defendants' motion is the specific claim against Kakani discussed and, instead, defendants only make brief mention of the treatment that others gave plaintiff. While plaintiff did not file a response to defendants' motion, Kakani has failed to meet the initial burden as the moving party and is therefore not entitled to summary judgment.

### B. Dr. Beekman's Motion

Dr. Beekman is a licensed orthopedic surgeon in private practice with medical privileges at a private hospital. He works in the outpatient orthopedics unit at W.A. Foote Hospital in Jackson, Michigan, where plaintiff received case. Dr. Mishra requested a second opinion

regarding plaintiff's hand condition from Dr. Beekman, who saw plaintiff on two occasions for consultation appointments for plaintiff's hand pain. The first consultation was October 25, 2005, when Dr. Beekman assessed plaintiff's hand pain, recommended an EMG study, and recommended that plaintiff wear a wrist brace. Dr. Beekman agreed to see plaintiff after the EMG. On December 12, 2005, plaintiff had an EMG study performed on his hand. On January 17, 2006, Dr. Beekman met with plaintiff for a follow-up appointment. After reviewing the EMG results, Dr. Beekman, exercising independent medical judgment, expressed some questions about the findings and suggested that plaintiff have an MRI. Dr. Beekman also discussed possible surgical intervention, though he expressed his reservations about whether surgery would resolve plaintiff's pain to any significant degree. These he sent to Dr. Mishra. In April, 2006, plaintiff was given a referral to a hand surgeon at the University of Michigan.

### 1. Acting Under the Color of State Law

One of the elements of a § 1983 claim is that the deprivation of the right was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir.2003) (quoting Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir.2003)). The crucial inquiry in determining whether a physician who provides medical services to inmates is a state actor for purposes of § 1983, is the relationship among the State, the physician, and the plaintiff. West v. Atkins, 487 U.S. 42, 56 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In West, the United States Supreme Court held that the defendant-physician who had contracted with the state to furnish medical services within the confines of the prison to inmates of state-prisons, was acting "under color of state law for purposes of § 1983" when he treated the plaintiff-inmate. West, 487 U.S.

at 57.  The Supreme Court found that the state was affirmatively obligated to provide medical care to the inmate, it had delegated that function to an otherwise private physician, and the physician voluntarily assumed that obligation by contract.  West, 487 U.S. at 56.

In this case, Dr. Beekman did not see plaintiff in the prison.  He is an independent physician in private practice.  The parties dispute whether Dr. Beekman had a contractual relationship with either MDOC or CMS.  According to Dr. Beekman's affidavit, he never had a contract or contractual relationship with MDOC or CMS (Exhibit A to Dr. Beekman's Motion for Summary Judgment, ¶ 6).  In his response, plaintiff provides a list of doctors' names, including Dr. Beekman, that plaintiff believes is a list of doctors under contract with CMS (Attachment to Plaintiff's Response to Dr. Beekman's Motion for Summary Judgment).  According to plaintiff, the list is an attachment from Hadix v. Caruso, No. 4:92-CV-110, 2007 WL 710136 (W.D. Mich. March 6, 2007).  However, nothing on the list itself identifies it as such and no attachments accompany that case.[5]

It appears that all services were provided through the hospital's orthopedic outpatient clinic.  There is no showing of a direct relationship between Dr. Beekman and the prison.  Dr. Beekman works in a private practice, he examined plaintiff at W.A. Foote Hospital, and neither MDOC nor CMS influenced or controlled his treatment of plaintiff (Exhibit A to Dr. Beekman's Motion for Summary Judgment, ¶¶ 3-4, 7).  Plaintiff does not refute any of those statements.

_____

[5]Even if Dr. Beekman's name is on the list from Attachment # 1 in Hadix, as plaintiff asserts in paragraph seven of his response, plaintiff also states in paragraph five of his response that the list of specialists under contract to provide services to prisoners is Attachment # 4, not Attachment # 1.

The instant case is therefore distinguishable from the factual setting in <u>West</u> and Dr. Beekman is entitled to summary judgment on the grounds that he is not a state actor. Dr. Beekman freely performed his medical duties in a physician-controlled environment. Dr. Beekman was not employed by the MDOC, nor was he under contract with the state to render medical services to prison inmates. Consequently, defendant did not act under color of state law.

### 2. Deliberate Indifference Claim against Dr. Beekman

Dr. Beekman also seeks summary judgment on the grounds that he was not deliberately indifferent. In support of his motion for summary judgment, Dr. Beekman provided his affidavit (Exhibit A to Dr. Beekman's Motion for Summary Judgment) and his consultation report (Exhibit B to Dr. Beekman's Motion for Summary Judgment). In his affidavit, Dr. Beekman states that he communicated his findings and analysis of plaintiff's hand injury to Dr. Mishra, but he left the decision of whether to perform surgery to Dr. Mishra and plaintiff. Plaintiff continued to receive medical attention through the prison system after Dr. Beekman stopped treating plaintiff (Dr. Beekman's Affidavit, ¶¶ 10-11). In the consultation report, Dr. Beekman wrote that, while surgery was a possible option for plaintiff, Dr. Beekman was "not sure it will resolve his pain to any significant degree."

In response to Dr. Beekman's evidence that he examined plaintiff twice, communicated his findings and analysis to plaintiff and Dr. Mishra, doubted the potential success of surgery and knew that other medical professionals were treating plaintiff, plaintiff provides no evidence and relies solely on his pleadings. As discussed above however, the burden is on plaintiff to submit evidence demonstrating that a material issue of fact exists. <u>Banks</u>, 330 F.3d at 892; Fed. R. Civ.

Pro. 56(e).  Plaintiff has failed to do so with respect to his deliberate indifference claim against Dr. Beekman and Dr. Beekman is entitled to summary judgment.

### C.  Remaining Defendants

The other two defendants in this case, MDOC and Nelson, should also be dismissed. Title 28 U.S.C. § 1915(e)(2)(B)(ii) authorizes the court to dismiss the claims against defendants, at any time, if the court determines that plaintiff has failed to state a claim upon which relief can be granted.[6]

With regard to MDOC, plaintiff has failed to state a claim under § 1983.  Under that statute, a *person* who deprives an individual of any federal constitutional or statutory right is liable to that individual.  However, state agencies, such as MDOC, are not considered a "person" for purposes of liability under § 1983.  See  Howlett v. Rose, 496 U.S. 356, 383, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Gean v. Hattaway,  330 F.3d 758, 766-767 (6th Cir. 2003); Dulai v. Michigan, Dept. of Community Health, No. 01-2407,  71 Fed.Appx. 479, 481 (6th Cir. July 25, 2003).

With regard to Nurse Nelson, she was only recently added and has not been served. Claims against her are only briefly mentioned in the second amended complaint and plaintiff does not make any specific allegations against her.  Nelson treated plaintiff at the Bixby Medical Center once and she informed plaintiff that plaintiff's right hand had been broken for some time,

---

[6]28 U.S.C. § 1915 only applies to plaintiffs proceeding *in forma pauperis*.  Plaintiff is proceeding *in forma pauperis* (D/E # 6).

prescribed plaintiff some Motrin, and told plaintiff to avoid re-injuring his finger (Second

Amended Complaint, ¶¶ 20A-21A). According to the second amended complaint, that is the

only time Nelson treated plaintiff. The second amended complaint completely fails to allege

deliberate indifference on Nelson's part or to cite any facts supporting such a claim. Given the

lack of any specific allegations against Nelson, the claims against her should be dismissed sua

sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[7]

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motions be

**GRANTED**, that CMS and Hutchinson be dismissed without prejudice for failure to exhaust and

failure to state a claim; Kakani should be dismissed without prejudice for failure to exhaust; and

that Dr. Beekman should be granted summary judgment. In addition, MDOC should be

dismissed as not a person subject to suit under § 1983. With respect to Nelson, the court

recommends that the claims against her be dismissed.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

---

[7]If the district judge disagrees on the merits, Nelson is still free to raise appropriate
affirmative defenses, including lack of proper exhaustion, following service.

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 22, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on January 22, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan